IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                           Criminal Action No. 3:16cr37

RODNEY D. CRAWLEY,
           Defendant.

## OPINION

This matter comes before the Court on a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) filed by the defendant, Rodney D. Crawley. (ECF No. 80.) Crawley requests compassionate release because of (1) the disparity between his original sentence and the sentence he would receive if sentenced today, (2) his medical conditions that put him at greater risk for COVID-19 complications and serious illness, and (3) his rehabilitation. Crawley asks the Court to order his immediate release, or in the alternative, to allow him to serve the remainder of his sentence on home confinement while on supervised release. The government opposes the motion. Because Crawley has not established an extraordinary and compelling reason to grant relief, the Court will deny Crawley's motion.

## I. BACKGROUND

On December 30, 2015, a United States Postal Inspector discovered forty pounds of marijuana in packages addressed to a home in Richmond, Virginia. Law enforcement conducted an arranged delivery of the packages, during which Crawley—then on unsupervised probation— put the packages in his car and drove to his home in Chesterfield, Virginia. Law enforcement searched Crawley's home and found 250.32 grams of a mixture containing methamphetamine in a safe in his bedroom and arrested Crawley. On May 12, 2016, Crawley pleaded guilty to

Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii).

The Presentence Investigation Report ("PSR") added a career offender enhancement under U.S.S.G. § 4B1.1 based on two of Crawley's prior felony convictions.[1] First, it applied the enhancement based on a conviction in Virginia state court for robbery—a felony conviction for a crime of violence—during which Crawley and his co-defendant allegedly pointed a gun at the victim. Second, it based the enhancement on a conviction for distribution of cocaine as an accommodation—a felony conviction for a controlled substance offense. This enhancement increased his offense level from twenty-six to thirty-four and his criminal history category from V to VI. Crawley then received a three-point reduction for acceptance of responsibility, which decreased his total offense level to thirty-one. Based on those calculations, Crawley had a Sentencing Guidelines range of 188 to 235 months.

During sentencing, Crawley contended that he did not use a firearm during the robbery and argued that the information about the firearm came "solely from the victim of the incident, no firearms were recovered, the firearm charge was nolle prossed, and Mr. Crawley only received a sentence of 4 months of active imprisonment, which suggests that firearms were not involved." (ECF No. 28, at 3.) In addition, in his sentencing position, Crawley argued that the robbery statute in Virginia does not meet the definition of a "crime of violence" under U.S.S.G. § 4B1.1, but he conceded that "there ha[d] been significant litigation challenging whether particular crimes, including robbery, are crimes of violence" following *Johnson v. United States*, 576 U.S. 591 (2015). (ECF No. 28, at 2.) Crawley's original counsel moved to withdraw after

---

[1] The PSR details an extensive criminal history beginning in 1994, when Crawley was 16 years old.

filing her position paper due to a breakdown in the attorney-client relationship, and at the sentencing hearing, Crawley's new counsel explained that she had undergone training about *Johnson*, and "[i]t seems that under Virginia law . . . robbery is in fact an offense of violence." (ECF No. 47, Dec. 13, 2016, Sentencing Hr'g, Tr. 6:5-6.) The Court then relied on *United States v. Doctor*, 842 F.3d 306, 311 (4th Cir. 2016) (holding that robbery under South Carolina law qualified as a predicate violent offense for the purposes of the Armed Career Criminal Act ("ACCA")), to conclude that Crawley "is a career offender, because the South Carolina and Virginia robbery laws are substantially the same, and both involve threatened use of physical force." (ECF No. 47, Dec. 13, 2016, Sentencing Hr'g, Tr. 7:15-18.) The Court sentenced Crawley to 188 months' imprisonment followed by 5 years of supervised release. Crawley is currently incarcerated at Federal Correctional Institute ("FCI") Cumberland with a projected release date of June 9, 2028.

Crawley filed multiple motions seeking post-conviction relief. On December 1, 2020, Crawley filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). He argued that his underlying medical history combined with prison conditions created a serious risk of contracting severe illness from COVID-19. The Court denied the motion because Crawley failed to exhaust his administrative remedies, did not show a particularized risk or susceptibility to COVID-19, and the 18 U.S.C. § 3553(a) factors weighed against reducing his sentence. On May 24, 2021, Crawley filed a second motion for compassionate release. Again, the Court denied the motion because Crawley failed to exhaust his administrative remedies, failed to demonstrate that he faced a particular risk of contracting COVID at the prison facility because the facility mitigated any COVID-19 outbreaks, and the § 3553(a) factors weighed against reducing his sentence.

Crawley has moved for compassionate release for a third time. He contends that several extraordinary and compelling reasons warrant compassionate release. First, he argues that, based the Fourth Circuit's decision in *United States v. White*, 24 F.4th 378 (4th Cir. 2022), Crawley would not qualify as a career offender if sentenced today, so his original sentence represents a sentencing disparity. Second, Crawley again argues that his medical conditions, combined with the prison facility conditions, put him at an increased risk of contracting COVID-19 and serious illness. Third, Crawley asserts that his exemplary conduct, education and vocational training, and willingness to help other inmates demonstrates his rehabilitation. Finally, Crawley contends that the § 3553(a) factors justify compassionate release because he has served a substantial portion of his current sentence, has a clean disciplinary record, has stable release plans, and has a large and supportive family.

## II. <u>LEGAL STANDARD</u>

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c). Pursuant to § 3582(c)(1)(A), however, a district court may reduce a criminal defendant's sentence if "after considering the factors set forth in § 3553(a) to the extent that they are applicable, it finds that . . . extraordinary and compelling reasons warrant such a reduction."[2] *Id.* § 3582(c)(1)(A)(i). "[P]rior to the First Step Act, courts could consider compassionate release only upon motion by the [Bureau of Prisons ("BOP")]." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). But today, § 3582(c)(1)(A) empowers a defendant to file his own motion for compassionate release so long as he first "fully exhaust[s] all

---

[2] Alternatively, a district court may modify a defendant's sentence provided that "the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community." *Id.* § 3582(c)(1)(A)(ii). This subsection does not apply to Crawley.

4

administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or waits thirty days "from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Although Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A), "the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13," which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276. For years following the passage of the First Step Act, the Sentencing Commission did not update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id.* at 281–82, 284. A court, therefore, remained "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

The Sentencing Commission, however, has amended the Sentencing Guidelines to address compassionate release motions brought by defendants and expanded the list of extraordinary and compelling reasons that support a sentence reduction. The reasons fall into several categories: (1) the defendant's medical circumstances, U.S.S.G. § 1B1.13(b)(1); (2) the defendant's age, *id.* § 1B1.13(b)(2); (3) the defendant's family circumstances, *id.* § 1B1.13(b)(3); (4) whether the defendant was the victim of certain abuse while in custody, *id.* § 1B1.13(b)(4); (5) "any other circumstances or combination of circumstances that, when considered by themselves or together with any" of the preceding categories, "are similar in gravity," *id.* § 1B1.13(b)(5); and (6) an unusually long sentence if the defendant meets certain conditions, *id.* § 1B1.13(b)(6). These amendments took effect on November 1, 2023.

The Fourth Circuit has yet to address precisely how courts should apply the amended policy statement to motions for compassionate release filed before November 1, 2023.[3] The Court need not reach this question, however, because Crawley has not established extraordinary and compelling reasons to reduce his sentence under either standard.

### III. ANALYSIS

#### A. Administrative Exhaustion

"By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction." *United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020). The parties agree—and the record supports—that Crawley exhausted his administrative remedies.[4] The Court, therefore, will turn to the extraordinary and compelling reasons Crawley contends justify a sentence reduction.

#### B. Extraordinary and Compelling Reasons

Crawley argues that three grounds support a sentence reduction: (1) changes in law regarding the career offender enhancement create a sentencing disparity between his current sentence and the sentence he would receive today; (2); COVID-19 combined with his health problems create a health risk that warrants a reduced sentence, and (3) Crawley has demonstrated

---

[3] *McCoy* strongly suggests that courts must at least consider the amended policy statement when resolving those motions. *See McCoy*, 981 F.3d at 284 ("[T]he Sentencing Commission maintains the statutory authority to update its guidance for district courts . . . after passage of the First Step Act. When it does, courts will be required to ensure that any sentence reductions granted on defendants' motions are consistent with that guidance, assuming, of course, that such guidance violates no statutory or constitutional provision." (citations and quotations omitted)).

[4] Crawley filed a compassionate release request with the Warden of FCI Cumberland on September 1, 2022. When the Warden did not respond within 30 days, Crawley then filed his motion for compassionate release with the Court on October 10, 2022.

significant rehabilitation that favor a sentence reduction when viewed alongside his other arguments. The Court will consider each argument in turn.

### 1. *Career Offender Status*

Crawley first argues that if sentenced today, the Court would impose a drastically shorter sentence than what he received at the time of his sentencing in 2016 because intervening changes in the law have clarified that Virginia common law robbery does not require the use of force, and therefore, the Court could not rely on his robbery charge as a predicate offense for the career offender enhancement if it sentenced Crawley today. Without the career offender enhancement, Crawley would have had an offense level of 23 and a criminal history category of V, resulting in a sentencing guidelines range of 84 to 105 months. Crawley contends that if the Court sentenced him today, he would have received a sentence within this lower guidelines range, cutting the significant sentence he received then in half.

#### *a. Habeas*

The government argues that Crawley cannot raise this argument because it "sounds in habeas." (ECF No. 87, at 20.) The government primarily relies on *United States v. Ferguson* to argue that Crawley should have raised this argument as part of a motion under 28 U.S.C. § 2255. 55 F.4th 262 (4th Cir. 2022). In *Ferguson*, the defendant argued several different "extraordinary and compelling" reasons warranted a sentence reduction: (1) his enhanced risk of contracting COVID-19; (2) the indictment did not allege he used a silencer, meaning the court should not have sentenced him to the 30-year mandatory minimum for his 18 U.S.C. § 924(c) charge ("Count Seven"); (3) the court failed to instruct the jury that the defendant's possession of a silencer "was an element of the offense on Count Seven"; (4) the government did not inform the defendant of the applicable penalty for Count Seven at his arraignment; (5) the court incorrectly

7

calculated his Guidelines at sentencing; and (6) the defendant received ineffective assistance of counsel. *Id.* at 265-66 (4th Cir. 2022). The Fourth Circuit affirmed the district court's decision to reject the defendant's non-medical arguments because they "were in substance a collateral attack on [the defendant's] convictions and sentence and . . . the proper vehicle for such a challenge is a 28 U.S.C. § 2255 motion to vacate, set aside, or correct a federal sentence." *Id.* at 269. It held that, "[b]ecause § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *Id.* at 270. *Ferguson* therefore clarified the limits of motions for compassionate release.

Here, *Ferguson* does not bar the Court from considering Crawley's argument. Crawley does not argue that the Court incorrectly calculated his Guidelines range at sentencing under the then-applicable sentencing laws and precedent or otherwise attack the Court's original sentencing decision. Rather, as explained below, he argues that due to non-retroactive changes to the sentencing laws, the Court would not classify him as a career offender if it sentenced him today, which would drastically lower his current Guidelines range, effectively creating a sentencing disparity. *See McCoy*, 981 F.3d at 287–88 (holding that courts may consider nonretroactive legislative changes as part of a motion for compassionate release). The Court, therefore, will turn to the merits of Crawley's argument.

### b. The Guidelines Enhancement

The career offender enhancement under the Sentencing Guidelines applies if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

8

U.S.S.G. § 4B1.1(a). The career offender enhancement increases the offense level "if the offense level for a career offender . . . in this subsection is greater than the offense level otherwise applicable." *Id.* § 4B1.1(b). Convictions with a statutory maximum of 25 years or more but less than life set the minimum offense level at 34. *Id.* § 4B1.1(b)(2). Section 4B1.1(b) also automatically increases a career offender's criminal history category to VI. *Id.* § 4B1.1(b).

Section 4B1.2 defines "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [(the "force clause")], or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c) [(the "enumerated offenses clause")].

U.S.S.G. § 4B1.2(a).

Courts often analyze § 4B1.2 hand-in-hand with the ACCA, which defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e). Thus, the ACCA defines "violent felony" in nearly the same way that § 4B1.2 defines "crime of violence" under its force clause, and "precedents evaluating the

9

ACCA apply with equal force to U.S.S.G. § 4B1.2." *United States v. Jarmon*, 596 F.3d 228, 231 n.* (4th Cir. 2010).

Crawley relies primarily on *White* to argue that a Virginia robbery charge does not satisfy the definition of "crime of violence," and, therefore, that Crawley would have had significantly different guidelines had the Court sentenced him today. In *White*, the Fourth Circuit asked the Virginia Supreme Court to certify whether, "[u]nder Virginia common law, . . . an individual can be convicted of robbery by means of threatening to accuse the victim of having committed sodomy." 24 F.4th at 379 (quoting *White v. United States*, 300 Va. 269, 272, 863 S.E.2d 483, 483 (2021)). Because the Virginia Supreme Court answered in the affirmative, the Fourth Circuit held that "Virginia common law robbery does not require as an element the actual, attempted, or threatened use of physical force," and therefore, that "Virginia common law robbery does not qualify as a 'violent felony' under [the ACCA's] force clause." *Id.* at 381–82.

*White*, however, noted that "[t]he ACCA also contains a separate 'enumerated crimes' clause for defining violent felonies, but that clause is not applicable here." *Id.* at 380 n.1. And the Guidelines and the ACCA contain an important difference: the ACCA's enumerated offenses clause does not include robbery, while the Guidelines's enumerated offenses does. Sentencing Commission Guidance regarding earlier versions of § 4B1.2(a)(2), explained:

> The "enumerated offense clause" identifies specific offenses that qualify as crimes of violence. In applying this clause, courts compare the elements of the predicate offense of conviction with the elements of the enumerated offense in its "generic, contemporary definition." As has always been the case, such offenses qualify as crimes of violence regardless of whether the offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another.

United States Sentencing Commission, *2023 Guidelines Manual, Supplement to Appendix C, Amendments to the Guidelines Manual, Amendment 798* (Nov. 1, 2023). And, in an unpublished,

10

pre-*White* decision, the Fourth Circuit compared Virginia's definition of common law robbery to the generic definition of common law robbery and concluded "that Virginia robbery is a crime of violence under USSG § 4B1.2(a)'s enumerated offenses clause." *United States v. Parker*, 716 F. App'x 190, 193 (4th Cir. 2018); *see also United States v. Fields*, 756 F. App'x 313 (4th Cir. 2019) (mem.) (same).[5] Moreover, after November 1, 2023, the Guidelines define "robbery" as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

U.S.S.G § 4B1.2(e)(3).

At this juncture, an open question remains as to whether and how *White* extends to the enumerated offenses clause under § 4B1.2. The Court cannot say with certainty that if it sentenced Crawley today it would have applied the career offender enhancement to Crawley's case or not varied downward.[6] But, at this time, it does not consider this uncertainty, without more, "extraordinary and compelling" under the compassionate release standard.

---

[5] No case has relied on *Parker* and *Fields* since the *White* decision, and the Fourth Circuit has yet to address how *White* or its progeny affect its conclusions in these cases, so it is unclear whether *Parker*'s or *Fields*'s holdings are still persuasive.

[6] Recently, another judge in this Court held that a defendant's robbery conviction pursuant to Va. Code § 18.2-58 did not qualify as a crime of violence for the purposes of U.S.S.G. § 4B1.1 based on *White*. *See United States v. Washington*, No. 3:20cr66 (DJN), 2023 WL 6226103, at *6–7 (E.D. Va. Sept. 22, 2023), *appeal docketed*, No. 23-7036 (4th Cir., Oct. 18, 2023). Thus, it concluded that an extraordinary and compelling reason existed supporting a sentence reduction under § 3582(c)(1)(A) but denied the motion for compassionate release based on the § 3553(a) factors. This reinforces the evolving nature of the law with regards to *White*.

### 2. *COVID-19 & Crawley's Medical Conditions*

Next, Crawley argues that the ongoing risk of COVID-19 at FCI Cumberland combined with his health problems, "while not dispositive, can be a factor militating in favor of release." (ECF No. 91, at 7.) During the COVID-19 pandemic, "courts . . . found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020). Further, "[t]he underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021).

> After November 1, 2023, the Sentencing Guidelines reflect a similar threshold:
>
> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof: . . .
>
> (i) [T]he defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(B).

The Court has twice rejected this argument, and even on a more complete record and under the amended Sentencing Guidelines, the Court continues to conclude that Crawley has not

proven that he has a particularized risk to contracting COVID-19 at his prison facility or that the prison facility cannot adequately mitigate such risk in a timely manner.

### 3. *Rehabilitation*

The parties agree that Crawley's rehabilitation alone does not establish an extraordinary and compelling reason to reduce his sentence. But Crawley contends that his rehabilitation combined with his sentencing disparity and risk of serious illness from COVID-19 create an extraordinary and compelling reason for compassionate release.

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 27 U.S.C. § 994(t). But, "[w]hile the district court is still empowered in its discretion to consider the facts of [the defendant's] original transgressions, the district court must also at least weigh [the defendant's] conduct in the years since their initial sentencing[]." *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021); *see also* U.S.S.G. § 1B1.13(d) ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").

Crawley has shown noteworthy rehabilitation. In Crawley's seven years in prison, he has been a model inmate, has maintained an infraction-free disciplinary record, has received glowing performance reviews from his work assignment, and has actively participated in prison programming. But this alone does not warrant a sentence reduction. And at this time, even when considering all the grounds he raises together, these arguments do not rise to the level of "extraordinary and compelling" sufficient to merit a sentence reduction.

## V. <u>CONCLUSION</u>

Because Crawley has not established an extraordinary and compelling reason to grant him a sentence reduction, the Court will not consider the § 3553(a) factors and will deny his motion. The Court's conclusions in this Opinion, however, do not foreclose the possibility that his argument regarding the career offender enhancement, especially when coupled with his noteworthy rehabilitation, could amount to an "extraordinary and compelling" reason to reduce Crawley's sentence in the future should the law develop to further support of his argument. The Court, therefore, will allow Crawley to re-raise this argument in a future motion for compassionate release, if appropriate. *Cf.* U.S.S.G § 1B1.13(b)(6).

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Crawley.

Date: 5 March 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge