PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-6257

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

RODNEY D. CRAWLEY,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:16-cr-00037-JAG-RCY-1)

Argued:  January 29, 2025                                                          Decided:  June 10, 2025

Before NIEMEYER, GREGORY, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Quattlebaum joined.

**ARGUED:**  Danny Zemel, THE KRUDYS LAW FIRM, PLC, Richmond, Virginia, for Appellant.  Daniel J. Honold, OFFICE OF THE UNITED STATES ATTORNEY, for Appellee.  **ON BRIEF:**  Jessica D. Aber, United States Attorney, Heather Hart Mansfield, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Rodney Crawley was sentenced in December 2016 to a 188-month term of imprisonment for a federal drug-trafficking conviction. His sentence included an enhancement under U.S.S.G. § 4B1.1(a) for being a career offender because he had, at the time of sentencing, "two prior felony convictions of either a crime of violence or a controlled substance offense." His two prior convictions were (1) a 2007 Virginia conviction for drug distribution and (2) a 2009 Virginia conviction for robbery. Without the career-offender enhancement, Crawley's sentencing range would have been 84 to 105 months' imprisonment.

In 2022, we held that Virginia robbery did not qualify as a "violent felony" for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i), because the crime could be committed without the use, attempted use, or threatened use of physical force. *United States v. White*, 24 F.4th 378, 382 (4th Cir. 2022). Prompted by that change in the law, Crawley filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), claiming that, because of *White*, he no longer qualifies as a career offender under the Sentencing Guidelines, and that this change, along with other circumstances, constituted extraordinary and compelling reasons warranting a reduction of his sentence. He relied not only on the disparity between his original sentence and the sentence he likely would have received at the time of his motion based on *White*, but also on a medical condition that put him at greater risk for COVID-19 complications and his rehabilitation while in prison.

2

In a written opinion, the district court denied Crawley's motion, rejecting each ground individually and in the aggregate, concluding that they did not amount to an extraordinary and compelling reason to grant a sentence reduction.

On appeal, Crawley contends that the change in the law, which would have resulted in a much shorter sentence, together with his rehabilitation, justified granting his motion for a sentence reduction and that the district court abused its discretion in denying it.

As explained herein, we conclude first that the Sentencing Commission's amended policy statement in U.S.S.G. § 1B1.13, which became effective on November 1, 2023, applies to Crawley's motion for compassionate release, even though he filed his motion before its effective date. Under that amended policy statement, a change in the law may constitute an extraordinary and compelling reason for a sentence reduction. Applying that provision, we conclude that our holding in *White* did indeed effect a change in the law that created a gross disparity between Crawley's 2016 sentence and the sentence he likely would have received had he been sentenced at the time of his motion. But we also conclude that Crawley failed to satisfy § 1B1.13(b)(6)'s additional requirement that he have served at least 10 years in prison before he could benefit from a change in the law. Because he has failed to show that his requested sentence reduction is consistent with the applicable policy statement, *see* 18 U.S.C. § 3582(c)(1)(A), we affirm.

I

Following a controlled delivery of drugs conducted by the U.S. Postal Service, Rodney Crawley was investigated and later charged with drug trafficking. After pleading

3

guilty to one count, the district court sentenced him on December 13, 2016, to 188 months' imprisonment, the bottom of the then-applicable Sentencing Guidelines range of 188 to 235 months' imprisonment. That range was enhanced under the Guidelines' career-offender provision, U.S.S.G. § 4B1.1(a), because Crawley had, at the time, two prior qualifying convictions — a 2007 Virginia conviction for distribution of cocaine and a 2009 Virginia conviction for robbery. Had Crawley not qualified as a career offender, his Guidelines range would have been 84 to 105 months' imprisonment.

In December 2020 and again in May 2021, Crawley filed motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A), relying mainly on his risk of serious illness from COVID-19, and the district court denied both motions.

Then, on October 10, 2022, prompted by our decision in *White*, Crawley filed a third motion for compassionate release. He argued that our decision in *White*, in which we held that Virginia robbery did not constitute a "violent felony" for purposes of ACCA, would also disqualify Virginia robbery as a predicate offense for his career-offender enhancement under the Guidelines. He thus contended that he was "serving a significantly longer sentence than he would receive were he sentenced today" because the career-offender enhancement was no longer applicable. And that sentencing disparity, he argued, "combined with his excellent record while in custody and particular susceptibility to becoming severely ill if he contract[ed] COVID-19," constituted extraordinary and compelling reasons to support his reduction in sentence and release. While Crawley asked the district court to order his immediate release, he requested, in the alternative, that he be allowed to serve the remainder of his sentence on home confinement.

4

The government opposed Crawley's motion, arguing that he had not established an extraordinary and compelling reason for release and that, in any event, the sentencing factors in 18 U.S.C. § 3553(a), which also had to be considered, did not support his early release.

While Crawley's motion for compassionate release was pending, the U.S. Sentencing Commission amended its policy statement in U.S.S.G. § 1B1.13, which governs such motions. The changes, which became effective on November 1, 2023, were extensive and included the identification of six circumstances that either on their own or in combination with others could constitute "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A). One of those circumstances involved "a change in the law" with respect to "an unusually long sentence." U.S.S.G. § 1B1.13(b)(6). But the amended policy statement also limited the relevance of an intervening change in the law, noting that it could not be considered "[e]xcept as provided in subsection (b)(6)." *Id.* § 1B1.13(c). And the amended policy statement provided further that "rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* § 1B1.13(d).

In an order dated March 5, 2024, the district court denied Crawley's third motion for compassionate release. While the court recognized that the Sentencing Commission had issued an amended policy statement with respect to motions for compassionate release, it concluded that Crawley's motion failed to establish extraordinary and compelling reasons under either the amended policy statement or the framework that preceded it.

5

Addressing Crawley's grounds for relief, the court noted that while our decision in *White* applied to ACCA, there was uncertainty as to whether it applied to the career-offender provision in the Sentencing Guidelines, as that provision had a different "enumerated crimes" clause.  The court concluded that "it [did] not consider this uncertainty, without more, 'extraordinary and compelling' under the compassionate release standard."  As to Crawley's claim of COVID-19 risks, the court stated that it had already rejected that claim twice earlier and that Crawley had not only failed to strengthen his claim that he was susceptible to contracting COVID-19 but had also failed to demonstrate that the prison facility could not adequately respond to such risk.  And as to rehabilitation, the court recognized that "Crawley ha[d] shown noteworthy rehabilitation" but that rehabilitation alone could not, under 28 U.S.C. § 994(t), constitute an extraordinary and compelling reason for compassionate release.  Finally, the court found that "even when considering all the grounds [Crawley] raise[d] together, [his] arguments [did] not rise to the level of 'extraordinary and compelling.'"  The court clarified, however, that it did not intend to "foreclose the possibility that [Crawley's] argument regarding the career offender enhancement" could "amount to an 'extraordinary and compelling' reason to reduce [his] sentence in the future," "especially when coupled with his noteworthy rehabilitation."  Accordingly, the court denied Crawley's motion without considering the § 3553(a) sentencing factors.

From the district court's March 5, 2024 order denying his motion for compassionate release, Crawley filed this appeal.

6

II

Crawley's motion for compassionate release was filed under 18 U.S.C. § 3582(c), which authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). As he now focuses his reasons on appeal, Crawley contends that since his original sentencing, the law has changed such that were he sentenced today, his sentence would likely be substantially shorter. And he argues that when this factor is combined with his rehabilitation while in prison, he has provided extraordinary and compelling reasons for his release.

These arguments implicate two provisions of the Sentencing Commission's amended policy statement — § 1B1.13(b)(6) and § 1B1.13(d). Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

And § 1B1.13(d) provides that "rehabilitation of the defendant is not, by itself," a sufficient reason to grant a motion for compassionate release but that it "may be considered in combination with other circumstances."

7

On appeal, Crawley argues mainly that our decision in *White* changed the law such that a Virginia robbery conviction could no longer serve as a predicate conviction for a career-offender enhancement. He maintains that the change produced a gross disparity between the 188-month sentence that he is serving and the 84-month sentence that he would likely have received had he been sentenced at the time he filed his motion. He also argues that he has satisfied the requirement of § 1B1.13(b)(6) that he have "served at least 10 years of [his] term of imprisonment." While he acknowledges that he has not actually spent 10 years in prison, he notes that he has spent over 9 years in prison and has earned more than 1 additional year in good-time credits, arguing that this fulfills the 10-year requirement.

We address each of these arguments in turn.

A

First, however, we consider whether the amended policy statement, which became effective on November 1, 2023, governs Crawley's motion for compassionate release. Crawley filed his motion on October 10, 2022, before the effective date of the amended policy statement, but the district court ruled on the motion on March 5, 2024, after the effective date. We conclude that in these circumstances, the amended policy statement does indeed apply to Crawley's motion.

Our conclusion follows from a natural reading of two provisions. First, § 3582(c) provides that district courts may grant a defendant's motion for compassionate release if such reduction in sentence "*is* consistent with *applicable* policy statements." 18 U.S.C.

8

§ 3582(c)(1)(A) (emphasis added). By directing district courts to decide compassionate release motions in light of policy statements that are *then applicable*, the provision suggests that the court should consider policy statements that are applicable at the time the court renders its decision — irrespective of when the motion itself was filed. Similarly, in U.S.S.G. § 1B1.13, the Sentencing Commission instructs that a district court may reduce a term of imprisonment if it "determines" that the "reduction *is* consistent with this policy statement." U.S.S.G. § 1B1.13(a)(3) (emphasis added). The policy statement thus presumes, without qualification, that it will serve as a guide to district courts at the time the courts render their decisions. A natural reading of these provisions thus indicates that district courts deciding motions for compassionate release after November 1, 2023, should apply § 1B1.13 when rendering their decisions.

And we have directly implied as much previously. Specifically, in *United States v. Davis*, we applied the amended policy statement in § 1B1.13 to "confirm and amplify" our conclusion that the district court had abused its discretion under existing case law, even though § 1B1.13 had not been in effect at the time of the district court's decision. 99 F.4th 647, 658 (4th Cir. 2024). We said, "It now falls on the district court to revisit Davis's arguments *in light of the Sentencing Commission's new policy statement* outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction." *Id.* (emphasis added). And we remanded the case to allow the district court to consider the effect of the Sentencing Commission's "new guidance" in § 1B1.13, even though it was not in effect when the defendant filed his motion. *Id.* at 661.

9

Accordingly, we conclude that the amended policy statement governs Crawley's motion, even though Crawley filed his motion before the amended policy statement took effect.

B

We now turn to Crawley's arguments. He contends first that our decision in *White* satisfied § 1B1.13(b)(6)'s requirement that there be a change in the law creating a gross disparity between the sentence he is serving and the sentence he would have received at the time of his motion. The *White* decision, he argues, disqualified Virginia robbery from serving as a predicate offense for the career-offender enhancement, and without the enhancement, he would likely have received a sentence over 8 years shorter than the sentence he received in 2016 — 84 months instead of 188 months.

While we accept that this 8-year disparity does constitute a "gross disparity" under the policy statement, that still leaves the question of whether *White* disqualified a Virginia robbery conviction under the career-offender provision in the Sentencing Guidelines, given that *White* construed ACCA, not the Sentencing Guidelines.

In *White*, we held that Virginia robbery was not a "violent felony" under ACCA's force clause. 24 F.4th at 382. In determining whether Virginia robbery satisfied that provision, we relied on the response of the Supreme Court of Virginia to the question we had certified to it and thus concluded that "an individual can be convicted of robbery [in Virginia] by threatening a victim with having committed 'sodomy,' to the extent that the accusation involves a crime against nature under existing state law." *Id.* at 381 (citing

10

*White v. United States*, 863 S.E.2d 483, 483, 485–86 (Va. 2021)).  Based on that response, we held that Virginia robbery can be committed without the force necessary to constitute a violent felony under ACCA's force clause, *id.* at 382, under which a crime, to be a "violent felony," must have as an element "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).

Because of the similarity in language, we conclude that the same can be said with respect to the force clause of the Guidelines' career-offender provision. *United States v. Parham*, 129 F.4th 280, 286 (4th Cir. 2025).  To qualify as a career offender, the defendant must have "at least two prior felony convictions of either a *crime of violence* or a controlled substance offense."  U.S.S.G. § 4B1.1(a)(3) (emphasis added).  And "crime of violence" is defined to include those felonies that have as an element "the use, attempted use, or threatened use of physical force against the person of another," using the same language employed by ACCA to define "violent felony."  *Id.* § 4B1.2(a)(1); 18 U.S.C. § 924(e)(2)(B)(i).  But unlike in ACCA, the "crime of violence" definition in the Guidelines also contains an enumerated list of crimes of violence that includes "robbery."  U.S.S.G. § 4B1.2(a)(2).

For many years, the Guidelines did not define "robbery," so we gave the term its "generic" meaning, which we determined to be "the misappropriation of property under circumstances involving *immediate danger to the person*."  *United States v. Gattis*, 877 F.3d 150, 158 (4th Cir. 2017) (emphasis added).  It therefore followed, as we recently recognized in *Parham*, that Virginia robbery was broader than generic robbery because, while Virginia robbery could be committed "by threatening to accuse the victim of

11

engaging in sodomy," generic robbery could be committed only with the use or threatened use of force against another person. 129 F.4th at 288 (citing *White*, 863 S.E.2d at 487). But now the Guidelines have defined robbery more broadly than that generic definition. The Guidelines' definition now reads:

> "Robbery" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

U.S.S.G. § 4B1.2(e)(3). This definition, which is drawn from the definition of robbery in the Hobbs Act, 18 U.S.C. § 1951(b)(1), is broader than generic robbery in that it covers robberies that can be committed by threatening not only *the person* but also *property*. *See United States v. Green*, 996 F.3d 176, 182 (4th Cir. 2021) (recognizing that Hobbs Act robbery is broader than generic robbery).

Nonetheless, even § 4B1.2(e)(3)'s new broader definition of robbery is still narrower than Virginia robbery. Again, Virginia robbery can be committed simply by threatening to accuse the victim "with having committed 'sodomy,'" *White*, 24 F.4th at 381, that is, *without* any force or threat of force against the person or property of another, whereas the Guidelines' definition of robbery still requires the use of "actual or threatened force, or violence, or fear of injury," U.S.S.G. § 4B1.2(e)(3). Thus, Virginia robbery does not qualify as a "crime of violence" for purposes of the Guidelines' career-offender enhancement under § 4B1.1(a).

12

Accordingly, we conclude that *White* did indeed effect a change in the law, thereby creating a disparity sufficient to satisfy U.S.S.G. § 1B1.13(b)(6). If Crawley had been sentenced at the time he filed his motion for compassionate release, he would not have qualified as a career offender under the Guidelines and therefore would likely have received a substantially shorter term of imprisonment.

C

But § 1B1.13(b)(6) also requires that Crawley show that he have "served at least 10 years of [his] term of imprisonment." U.S.S.G. § 1B1.13(b)(6). While he acknowledges that he has spent less than 10 years of his more than 15-year sentence in prison, he argues that when his good-time credits are added to the more than 9 years that he has spent in prison, he has served, in effect, a term of imprisonment of over 10 years and that he therefore has satisfied § 1B1.13(b)(6)'s 10-year requirement. In advancing that argument, he implicitly equates "serving 10 years of a term of imprisonment" with "serving a 10-year term of imprisonment," as adjusted by good-time credits. Pointing to 18 U.S.C. § 3624(b)(1) for support, he argues that "the term 'time served' is properly understood to encompass good time credits," which, under the statute, count "toward the service of the prisoner's sentence."

This argument raises the question of how to construe the requirement of § 1B1.13(b)(6) that the defendant have "served at least 10 years of the term of imprisonment."

13

In answering that question, we presume that a provision's drafters gave its terms their ordinary meaning, unless context dictates otherwise. *See Monsalvo Velázquez v. Bondi*, 145 S. Ct. 1232, 1241 (2025); *see also United States v. Hansen*, 599 U.S. 762, 775 (2023) (explaining that the choice between ordinary and specialized meaning turns on a provision's context). And here, we conclude that the phrase "served at least 10 years of the term of imprisonment" carries its ordinary meaning. None of the words in that phrase are defined, and we see no indication from their context that the Sentencing Commission intended to give them a specialized meaning. *See Hansen*, 599 U.S. at 775.

To demonstrate the ordinary meaning, we compare the phrase "served at least 10 years" of a prison term with the phrase "served at least a 10-year prison term." In the first phrase, the direct object of served is "10 years" — a *time period* — and in the second, the direct object is a "prison term" — a *sentence*. While the distinction might seem subtle at first blush, it is nonetheless material. When a person has served 10 years, he has spent 10 years' time in prison. But when he has served a 10-year sentence, he may or may not have spent 10 years' time in prison, because, as a practical matter, *the sentence* might have been adjusted for good-time credits under 18 U.S.C. § 3624(b)(1). While § 3624 provides for credits to adjust a sentence, § 1B1.13(b)(6) requires service of a specified *time*, not a specified *sentence*. In short, service of a specified *time* in prison is a concept distinct from service of a specified *sentence*, and § 1B1.13(b)(6) requires that the defendant have served the specified 10 years' *time* in prison.

14

Because Crawley concedes that he has not spent 10 years' time in prison, consideration of the § 1B1.13(b)(6) factor of the amended policy statement is not available to him.

Recognizing that the ordinary meaning of § 1B1.13(b)(6) dooms his case, Crawley implicitly collapses the meanings of "serving a specified time in prison" and "serving a sentence" in prison. With that implicit merger of words, he reads § 1B1.13(b)(6) to incorporate the substance of the good-time credits statute, which provides that a defendant "may receive credit toward the *service of [his] sentence*" if he satisfies several requirements. 18 U.S.C. § 3624(b)(1) (emphasis added). But the statute's focus is on the reduction of a given *sentence* by means of credits and therefore the consequent reduction of the time served. But, as we have noted, a *sentence* adjusted with credits is distinct from the usage in U.S.S.G. § 1B1.13(b)(6), which requires the defendant to serve at least *10 years' time*, clearly referring to *time*, not a *sentence*. We thus reject this argument.

Crawley has not renewed his COVID-19 argument on appeal, and he does not dispute that his rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. *See* U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t). Accordingly, we affirm the district court's decision to deny his motion for compassionate release. But we note that Crawley may soon satisfy the 10-year requirement under § 1B1.13(b)(6) and may then file a new motion before the district court. But even then he must recognize that the 10-year requirement is but one factor of many for the district court to consider in exercising its discretion under § 3582(c)(1)(A).

AFFIRMED