UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           Case No. 3:16-cr-00037

RODNEY D. CRAWLEY,

    Defendant/Petitioner.

**Petitioner's Memorandum in Support of his Motion for Compassionate Release**

When Mr. Crawley first filed for compassionate release pro se in 2021, he described his "complete turn around" while incarcerated. ECF 63, at 6. In the years since then, his outstanding efforts to better himself have not ceased. He has completed innumerable programs and certifications to prepare for employment after he is released. His disciplinary record remains spotless and his faith and connection to his family have not wavered. He has done exactly what this Court recommended he do when it sentenced him in 2017. *See* ECF 47, at 35. Even the Bureau of Prisons has recognized the change in Mr. Crawley as it released him to home confinement recently.

In addition, the law has changed since Mr. Crawley was sentenced. As the Fourth Circuit clarified in *United States v. Crawley*, 140 F.4th 165 (4th Cir. 2025), Mr. Crawley would not be a career offender were he sentenced today. An individual sentenced today for the same crime and with the same circumstances would be subject to a guidelines range of approximately half what Mr. Crawley faced. And even the high end of that range would still be less than the time Mr. Crawley has already served.

The change in law has created a gross disparity between Mr. Crawley's sentence and what a similarly situated defendant would be sentenced to today. That disparity, combined with his

1

impressive rehabilitation efforts, constitute extraordinary and compelling reasons sufficient to warrant a reduction in his sentence to time served.

**Relevant Factual and Procedural Background**

In December 2016, after Mr. Crawley pled guilty to a drug-trafficking crime, this Court sentenced him to a term of 188 months. ECF 94, at 1-3. After unsuccessful appeals and a failed habeas attempt, Mr. Crawley filed his first two motions for compassionate release based on the risk of contracting COVID-19 and his underlying medical history making him more susceptible to the disease. *Id*. at 3-4. Both were rejected. In his third compassionate release motion, now represented by counsel, Mr. Crawley argued (primarily) that a change in law constituted an extraordinary and compelling reason justifying a reduction in his sentence. Specifically, he contended that were he sentenced for the same crime today, he would no longer be considered a career offender, and thus his recommended guideline range would be appreciably lower. That gross disparity between what he was sentenced to and what he would receive today, he argued, entitled him to relief when combined with his extraordinary rehabilitation efforts. *Id*. at 4.[1]

This Court held that it was uncertain whether Mr. Crawley would be a career offender if sentenced today, and that uncertainty was not sufficient to meet the compassionate release standard. *Id*. at 11. On appeal, the Fourth Circuit clarified its precedent on the issue and held: "If Crawley had been sentenced at the time he filed his motion for compassionate release, he would not have qualified as a career offender under the Guidelines and therefore would likely have received a substantially shorter term of imprisonment." *United States v. Crawley*, 140 F.4th 165, 172 (4th Cir. 2025). However, the Fourth Circuit went on to hold that Mr. Crawley had not met

---

[1] The updated policy statements from the Sentencing Commission were released after this filing, but before this Court issued its ruling.

2

the other requirement not imposed by the Sentencing Commission's policy statement – that he had served ten years of his term of imprisonment.[2]

During the pendency of his motions and appeals, Mr. Crawley has continued his impressive rehabilitation efforts, kept his disciplinary record clean, and stayed in close contact with his support system – his family and friends in Richmond. He has continued to make use of his time at FCI Cumberland and obtained additional certifications and learned new skills that will assist in his readjustment once released from incarceration. Demonstrative of his efforts, he was transferred to home confinement in January 2026. His daughter was able to pick him up from prison and take him to the apartment in Richmond he is sharing with his cousin.

In December 2025, while still at FCI Cumberland and in anticipation of hitting that ten-year mark, Mr. Crawley filed an administrative request with the Warden of FCI Cumberland seeking to file a new motion for compassionate release. Under 18 § 3582(c)(1)(A), because thirty days has elapsed since that time without a response from the Warden, Mr. Crawley is entitled to bring this motion to this Court. *See* ECF 94, at 6, n. 4.

## Legal Standard

Under 18 U.S.C. § 3582(c), a district court retains the authority to modify terms of imprisonment if it: "(1) considers the § 3553(a) factors for imposing a sentence, (2) finds that 'extraordinary and compelling reasons warrant such a reduction,' and (3) finds that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up).

---

[2] The Fourth Circuit rejected Mr. Crawley's arguments about the interpretation of the statutory phrase "term of imprisonment" and how good time credits could be factored into that ten-year requirement.

The Sentencing Commission's 2023 amended policy statement contained two provisions relevant to Mr. Crawley – Sections 1B1.13(b)(6) and 1B1.13(d). Section 1B1.13(b)(6) states that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

And 1B1.13(d) provides that:

> [R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d).

## Argument

**I.  Mr. Crawley has shown extraordinary and compelling reasons justifying relief.**

The Fourth Circuit's and Supreme Court of Virginia's decisions in *White*, applied to the Sentencing Guidelines by the Fourth Circuit in *Crawley*, instituted a significant change in the law. That change, as held by the Fourth Circuit, creates a gross sentencing disparity in Mr. Crawley's case. That disparity, combined with Mr. Crawley now having served ten calendar years and having exhibited what this Court called "noteworthy rehabilitation," ECF 94, at 13, constitutes an extraordinary and compelling reason justifying sentence reduction. The application of the relevant

sentencing factors to Mr. Crawley's current position demonstrates that his sentence should be reduced to time served.³

> A. **A reduction in Mr. Crawley's sentence would be consistent with the Sentencing Commission's policy statements.**

In ruling on Mr. Crawley's prior motion for compassionate release, the Fourth Circuit noted that had "Crawley had been sentenced at the time he filed his motion for compassionate release, he would not have qualified as a career offender under the Guidelines and therefore would likely have received a substantially shorter term of imprisonment." *United States v. Crawley*, 140 F.4th 165, 172 (4th Cir. 2025). Accordingly, the Fourth Circuit ruled that the change in law instituted by *United States v. White*, 24 F.4th 378 (4th Cir 2022), "creat[ed] a disparity sufficient to satisfy U.S.S.G. § 1B1.13(b)(6)." *Id*. The Fourth Circuit went on to hold though that Mr. Crawley had not yet served ten years and thus did not meet all the requirements of § 1B1.13(b)(6). *Id*. at 173. As of February 2, 2026, Mr. Crawley has served ten years. Exhibit 1, at 8. He therefore satisfies the requirements of § 1B1.13(b)(6).

> B. **The combination of Mr. Crawley's grossly disparate sentence and impressive rehabilitation constitutes an extraordinary and compelling reason justifying relief.**

As this Court noted in a prior opinion, "Crawley has shown noteworthy rehabilitation. In Crawley's seven years in prison, he has been a model inmate, has maintained an infraction-free disciplinary record, has received glowing performance reviews from his work assignments, and has actively participated in prison programming." ECF 94, at 14. This Court denied his motion,

---

³ This is not an all or nothing determination. This Court possesses the authority to reduce, but not eliminate, Mr. Crawley's remaining sentence. *United States v. Curry*, No. 1:05-cr-282, 2021 U.S. Dist. LEXIS 122812, *19 (M.D.N.C. June 25, 2021) (collecting cases).

though, as it determined that it was not clear whether Mr. Crawley would be subject to a different guideline recommendation were he sentenced at that time. *Id*. at 11.

As discussed above, the Fourth Circuit has provided clarity and held that Mr. Crawley would be subject to a lower guideline recommendation today. Specifically, if he were sentenced today, his sentencing guidelines range would be 84-105 months, as opposed to the range of 188-235 months applicable in 2016 at his original sentencing. ECF 86, at 1; *United States v. Crawley*, 140 F.4th 165, 170-71 (4th Cir. 2025). As of the filing of this motion, Mr. Crawley has served approximately 120 months, Exhibit 1, at 8, or more than a year over the high end of what the guidelines would be today.

In addition, Mr. Crawley has only continued his impressive rehabilitation in the almost two years since this Court's opinion denying his prior motion. His disciplinary record is still spotless, Exhibit 1, at 1, and he has obtained additional certifications. *Id*. at 2. Largely due to his impressive rehabilitation, the Bureau of Prisons sees Mr. Crawley as being at a low risk of recidivism, *id*. at 3, and has released Mr. Crawley to home confinement. Demonstrative of his close family connections, Mr. Crawley's cousin moved into a two-bedroom apartment to provide Mr. Crawley with an appropriate place to live in Richmond. This cousin, Bryan Tunstall, is someone Mr. Crawley has planned to live with for a while now. *See* ECF 81, at 17. His support is discussed more below.

Mr. Crawley has demonstrated extraordinary and compelling reasons sufficient to grant a reduction in the sentence this Court previously imposed. Specifically, he asks this Court to release him from the remainder of his term of home confinement, and either eliminate, or greatly reduce, his period of supervised release.

## II. The sentencing factors weigh in favor of reducing Mr. Crawley's sentence to time served.

When this Court sentenced Mr. Crawley in 2017, it not only "selected a number at the bottom [of the guidelines]" but also "hope[d] that something will happen to help you reduce that." ECF 47, at 34-35. This Court recommended that Mr. Crawley keep in touch with his family while incarcerated and "participate in any educational or vocational training as well as the Bureau of Prisons 500 hour intensive substance abuse treatment program." *Id*. at 35. Mr. Crawley has done exactly what this Court recommended, and the changes in law brought about by *United States v. White*, 24 F.4th 378 (4th Cir 2022) and the First Step Act have created the change this Court had hoped would occur. Mr. Crawley has served in excess of the high end of the guidelines. During that time, he has obtained numerous certifications, taken classes to better himself, kept a blank disciplinary record, and maintained contact with his family and support structure back in Richmond. The sentencing factors weigh in favor of granting his immediate release.

Section 3553(a)(1-7) sets out numerous factors a court shall consider in reaching a sentencing that is "'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *United States v. Eubank*, No. 3:19-cr-86, 2022 U.S. Dist. LEXIS 158087, *8 (E.D. Va. Aug. 31, 2022) (quoting 18 U.S.C. § 3553(a)). As summarized by this Court, the sentencing factors are:

> (1) the defendant's sentence relative to the nature and circumstances of his offense; (2) his personal history and characteristics; (3) the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to provide rehabilitative services; (7) the applicable guideline sentence; and (8) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct; and (9) the need to provide restitution.

*Eubank*, 2022 U.S. Dist. LEXIS 158087, at *8 n. 10 (citing 18 U.S.C. § 3553(a)(1)-(7)).

At Mr. Crawley's sentencing, this Court focused on the fact that the offenses involved "just a lot of drugs." ECF 47, at 30. That is true and has not changed, nor could it. But there have been other changes which alter the analysis when it comes to the sentencing factors. First, Mr. Crawley "has shown noteworthy rehabilitation," and "been a model inmate." ECF 94, at 13. Second, the applicable guideline sentence and potential unwarranted sentencing disparities have changed greatly. And third, the need to deter Mr. Crawley from committing similar offenses and protect the public from those crimes has dissipated.

Mr. Crawley's personal history and characteristics now weigh much more in favor of his release. When addressing a motion for compassionate release, district courts account for "the defendant's 'post-sentencing conduct and rehabilitation.'" *Eubank*, 2022 U.S. Dist. LEXIS 158087, at *8 (quoting *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020)). Mr. Crawley's conduct and rehabilitation while in custody has been exemplary.

Once in custody, he almost immediately completed the BOP's drug education program. Exhibit 1, at 3. After that, he set about taking advantage of all BOP courses available him. Mr. Crawley took classes in commercial driving, critical thinking, accounting, drywall, carpentry, and more. *Id*. at 2 The COVID-19 pandemic then shut down the BOP courses, but once they opened up again, Mr. Crawley jumped right back into learning as much as he could. He obtained a forklift certification, a food safety certification, and is in the process of obtaining a food safety manager certification *Id*. Lastly, he is taking classes in sign language and mentorship. *Id*. Mr. Crawley's conduct while in BOP custody "provides the most up-to-date picture of his [] 'history and characteristics.'" *United States v. Dyches*, No. 8:06-136-JFA, 2021 U.S. Dist. LEXIS 148306, at *17 (D.S.C. Aug. 9, 2021) (citations omitted). Mr. Crawley has done all he can to make use of the time he has spent in prison.

When Mr. Crawley filed his last motion for compassionate release, in October 2022, his close relationship with his family was highlighted:

> In addition to Mr. Tunstall, numerous other members of Mr. Crawley's family reside in Richmond, or the surrounding areas, and are committed to making sure Mr. Crawley succeeds if he is released. His father, Rodney McCrae, and stepmother live in Richmond and are excited to potentially have Mr. Crawley back with them. Mr. McCrae even has a job lined up for Mr. Crawley as a cook at a McDonald's location in Richmond to which Mr. McCrae is willing to provide any transportation help that is necessary. Mr. Crawley's sister, Jennifer McCrae, also lives in Richmond and has volunteered to assist Mr. Crawley with getting to work, medical appointments, and any other support he needs. Mr. Crawley would be returning to a family and community ready to help him succeed.
>
> Lastly, Mr. Crawley will be of support to his family as well. His daughter Fai'shun Crawley, with whom he has a good relationship, lives in Richmond. During his incarceration, Mr. Crawley has maintained a strong relationship with his only daughter. Even with the lockdowns caused by the COVID-19 pandemic, Mr. Crawley and Fai'shun speak at least weekly, often twice or three times a week. Mr. Crawley's sister who is disabled also lives in the area and Mr. Crawley would like the opportunity to assist her and be a part of her life again.

ECF 18, at 19-20.

Over three years later, the family is still just as close. His daughter Fai'shun picked him up from FCI Cumberland in Maryland and took him back to Richmond. She is committed to assisting her father to make positive choices and continue the work he has been doing. *See* Email from Fai'Shun Crawley to undersigned counsel, attached as Exhibit 2. His cousin, Bryan Tunstall, is letting Mr. Crawley live with him for the foreseeable future, including after any home confinement period expires. *See* Email from Bryan Tunstall to undersigned counsel, attached as Exhibit 3. Mr. Tunstall is helping Mr. Crawley take the necessary steps to restart his life, including getting identification and employment. *Id*. Mr. Crawley's father also remains supportive and the whole family is committed to helping Mr. Crawley succeed. This includes any logistical support he may need, including transportation pending Mr. Crawley obtaining a driver's license.

Lastly, as discussed above, the BOP no longer sees Mr. Crawley as a risk to re-offend or as a risk to the public. They have released him to home confinement in Richmond. The second sentencing factor therefore weighs heavily in favor of a sentence of time served.

Similarly, Mr. Crawley's efforts while behind bars and the conclusions of the BOP regarding him show that he has been deterred from further crimes, is no longer a risk to the public, and has received (and benefitted from) the services offered by the BOP. The fourth, fifth, and sixth factors now weigh more in favor of time served as well.

Lastly, for factors seven and eight, the applicable guideline sentence when Mr. Crawley was sentenced was 188-235 months. It would now be 84-105 months. ECF 86, at 1. As of this filing, Mr. Crawley has served approximately 120 months. He has served more than a year beyond the high end of the guidelines for a similarly situated defendant sentenced today. Accordingly, both the seventh and eighth factors weigh in favor of reducing his sentenced to time served.

\*   \*   \*

Mr. Crawley and his family are ready to move into the next chapter of his rehabilitation. He has demonstrated his willingness and commitment to change, and the change in law gives him the opportunity to further that process. He respectfully asks that this Court reduce his sentence to time served by eliminating the remainder of his period of home confinement and eliminating his period of supervised release so that he may take those next steps.

Respectfully submitted,

RODNEY D. CRAWLEY,

By:   ____/s/ Danny Zemel____
               Counsel

Danny Zemel (VSB# 95073)

THE KRUDYS LAW FIRM, PLC
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone
804.381.4458 Fax
dzemel@krudys.com
*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record.

      /s/ Danny Zemel
Danny Zemel (VSB# 95073)
THE KRUDYS LAW FIRM, PLC
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone
804.381.4458 Fax
dzemel@krudys.com
*Counsel for Petitioner*